MARIE A. FELLOWS-KIMBROUGH, Defendant in Error, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 16, 1916.*

1. EVIDENCE—*an expert cannot give opinion as to future consequences that are mere possibilities.* A physician testifying in a personal injury case, who admits that he was mistaken when he testified four years before, in a former trial, that the lump in the plaintiff's breast was a cancer, should not be allowed to testify that the lump might remain dormant for several years and then become a cancer, as such statement is an opinion on a mere possibility and is not admissible.

2. SAME—*when expert cannot give opinion that plaintiff's injury and condition are the result of the accident.* If there is a conflict in the evidence as to whether the plaintiff's alleged injury and physical condition at the time of the trial are the result of the accident, it is error to permit a physician to give his opinion that such injury and condition resulted from the accident.

3. SAME—*when physician may testify that malady was the result of original injury.* If there is no dispute as to the manner and cause of the plaintiff's injury and no dispute that there was an injury sustained by reason of the acts of which complaint is made, a physician may testify that a malady with which the plaintiff is afflicted at the time of the trial was or was not caused by the accident or the original injury.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. C. A. MACDONALD, Judge, presiding.

JOHN E. KEHOE, and CHARLES LEROY BROWN, (JOHN R. GUILLIAMS, of counsel,) for plaintiff in error.

HARVEY WYNEKOOP, and EDWARD MAHER, (GUERIN & BARRETT, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

An action on the case for personal injuries alleged to have been sustained September 5, 1907, was brought by Marie A. Fellows-Kimbrough against the Chicago City

Railway Company, plaintiff in error, in the superior court of Cook county. On the first trial, in February, 1909, defendant in error claimed that a malignant cancer was developing in her breast as a result of her injuries, and the jury awarded $7000 as damages. The trial judge required a *remittitur* of $3000 and entered judgment for $4000. That judgment was reversed by the Appellate Court for the First District because of the improper conduct of one of the attorneys for defendant in error. On the second trial, in March, 1913, her physicians testified, in substance, that the lump in her breast, which they had in the first trial testified was in their opinion a cancer, was a fatty tumor about the size of a hen's egg, the removal of which, as shown by the evidence, was a simple matter that would not be followed with serious consequences. The only other ailment claimed by defendant in error on the second trial to be still enduring as a result of her injuries was a traumatic neurasthenia, which plaintiff in error insisted was the result of a series of troubles that she experienced as the result of three marriages and two divorces and two long spells of sickness and confinement in a hospital, during which time she underwent two severe surgical operations. On the second trial the jury returned a verdict for $3750 damages, upon which the court entered judgment. The Appellate Court affirmed that judgment, and a writ of *certiorari* was granted by this court for the purpose of reviewing the judgment of the Appellate Court.

The injury to defendant in error happened at the crossing of Indiana avenue and Thirty-fifth street, in Chicago, upon which streets plaintiff in error was operating street railways. The east-bound Thirty-fifth street car on which the defendant in error was a passenger was a small, single-truck, open summer-car of the old type. It stopped on the west side of Indiana avenue. After receiving and discharging passengers it started forward, and had almost cleared the east or north-bound track on Indiana avenue when a

north-bound Indiana avenue car ran into its rear platform, knocking the small car off the track and leaving it pointing southeast and northwest. The Indiana avenue car was a modern pay-as-you-enter car, forty-eight feet long and weighing about twenty-seven tons. The only injury to the cars in the collision was the breaking of the headlight on the large car and the knocking off of the rear fender and a slight springing of the axle of the small car. The evidence of defendant in error,—a colored woman and physician in active practice and earning $200 per month by her profession,—tends to show a very violent collision, and that she was thrown between the floor of the car and the seat in a "twisted up" position and received severe bruises on her leg and in her chest or breast, a fracture of one or two of her ribs, and other injuries, from which she suffered great pain, nervousness, weakening of the mental faculties, and from which injuries resulted the tumor and the traumatic neurasthenia aforesaid. Her evidence also tended to show that she was a strong, robust, lively, energetic woman of the age of forty-one years and weighing 250 pounds when injured. The evidence of plaintiff in error tends to show that the collision was slight and did little damage to the cars, and caused no injury to defendant in error or to anyone on the Thirty-fifth street car.

It was the invariable rule that the cars on both of said lines should always stop at the intersection of said streets before they went over the crossing. When the east-bound Thirty-fifth street car started east from its position of stop on the west side of Indiana avenue the north-bound Indiana avenue car was about one hundred feet south of Thirty-fifth street, and there was no signal or other indication to the employees in charge of the Thirty-fifth street car that the Indiana avenue car could not or would not stop at the south cross-walk of Thirty-fifth street, in accordance with the rule in that regard. At the time the north-bound Indiana avenue car was about one hundred and

fifty feet south of Thirty-fifth street crossing the motorman on that car attempted to throw off the power by the controller and bring the car to a stop. He was unable to move the controller handle past a certain point on the dial of the controller box because one of the metal fingers on the inside of the controller box had in some unknown way become bent and locked and held the controller so that the power could not be cut off and the car stopped by the controller. The motorman made repeated attempts to stop the car with the controller and by applying the air, but found it impossible to do so. When in about fifty feet or less of the crossing of said streets the motorman for the first time thought of the canopy switch over his head, a contrivance by which he could, by pressing a button in easy reach of him, have shut off the power entirely and by applying the air have stopped his car within a distance of from fifty to seventy-five feet. The canopy switch was intended for use in stopping the car only in case of an emergency, when the car could not be stopped by the controller, and the only reason why the motorman did not use it sooner, as the Appellate Court has apparently found, was that he did not think of it sooner while trying to stop the car. The evidence further shows that the controller box and metal fingers had been inspected in the shop on the day of the injury to defendant in error and before the car left the shop and that it had made several trips that day before the injury, and that there was no indication that there was anything wrong with the controller or metal fingers until the motorman undertook to use the controller for making the stop in question at said crossing.

It is first argued by plaintiff in error that the trial court erred in permitting purely speculative evidence as to the future consequences of the tumor in the breast of defendant in error to be considered by the jury. The particular evidence in question appears in the cross-examination and

re-direct examination of defendant in error's witness, Dr. Mowery, which appears in the record as follows:

Q. "Doctor, if it was cancer at the time of this trial, four years ago, what would. be its condition at the present time?

A. "To all intents and purposes if it broke through the basement member four years ago with cancer this woman would have been dead.  If it had been cancer four years ago she would not necessarily have been dead three years ago, as those things are very slow, sometimes.

Q. "Isn't it the universal opinion in such cases that it could not lie dormant for that length of time?

A. "I think this case at the present time can lie dormant for a number of years and· become a cancer.  (Motion by defendant to strike out answer as to what it might become and as not being responsive; motion overruled, to which ruling defendant duly excepted.)

Q. "Doctor, if it was a cancer four years ago would that woman be alive now?

A. "No."

Re-direct examination by Mr. Maher:

Q. "Doctor, you say, as I understand you, that the seed of cancer, or the conditions that cause a cancer, may lie dormant for a number of years before they develop into cancer.  How long would that period of dormancy be?

A. "The dormancy may extend over years.  A little lump may be in the breast and lie there for years dormant and become cancer after a number of years."

The last question and answer were also objected to by plaintiff in error as speculative evidence and that it was not re-direct examination, but the objections were overruled and proper exceptions preserved.

It is clear that the evidence thus elicited and objected to by plaintiff in error is purely speculative evidence,—that is, the conjecture of the witness as to consequences that are mere possibilities,—and was therefore incompetent.  The

witness admitted in his examination that defendant in error did not have a cancer at that time and had not had one, and that he was mistaken when he testified on the former trial that the lump in question was a cancer. The examination of Dr. Mowery by plaintiff in error, as above shown, was for the purpose of getting him to admit that he was so mistaken. His answer to the question of plaintiff in error, and to which it objected, was not responsive to the question, as insisted by defendant in error, and should have been excluded by the court. Plaintiff in error was inquiring as to what would have been the result if defendant in error had really had a cancer four years before, as the witness had testified, and the answer was, in substance, that the tumor might lie dormant for a number of years and then develop into a cancer. For the reason that the answer was not responsive the court also committed error in allowing the defendant in error to repeat the objectionable evidence on re-direct examination, and the jury were thus permitted to consider the same in fixing the amount of her damages. Mere surmise or conjecture cannot be regarded as proof of an existing fact or of a future condition that will result. Expert witnesses can only testify or give their opinion as to future consequences that are shown to be reasonably certain to follow. *Lauth* v. *Chicago Union Traction Co.* 244 Ill. 244; *Lyons* v. *Chicago City Railway Co.* 258 id. 75.

The court also erred in overruling plaintiff in error's objections to the evidence of Dr. Adams in his examination in chief by defendant in error's counsel, as shown by the following questions and answers, to-wit:

Q. "Doctor, referring to the supposititious or hypothetical patient and taking into account the elements of the hypothesis, have you an opinion as a medical man, and based upon reasonable certainty, as to what was the cause of the neurasthenia and the tumor in the hypothetical patient?

A. "Yes, sir.

Q. "What is your opinion as to the connection between this disease and the tumor or growth in the breast?

A. "That the tumor resulted from the bruise,—the injury to the breast. The neurasthenia resulted from the shock of the accident and was kept alive by the breast condition."

One of the objections of the plaintiff in error to the foregoing questions was that they were improper, as invading the province of the jury and calling for an opinion on an ultimate fact. Where there is a conflict in the evidence, as in this case, as to whether or not the party suing was injured in the manner charged, it is not competent for witnesses, even though testifying as experts, to give their opinions on the very fact the jury is to determine. Whether or not the collision or accident in this case caused traumatic neurasthenia in the defendant in error or caused the tumor in her breast are ultimate facts upon which the jury must make their findings. It is no more proper, legally, for physicians to settle those questions for the jury by their direct answers than it would be for a motorman of another street car company to settle the question of negligence by testifying in broad terms that the plaintiff in error was guilty of negligence because its motorman failed to cut off the power by use of the canopy switch in time to prevent the collision. The rule in such cases is not different where hypothetical questions are put to the expert witnesses. A physician may be asked whether the facts stated in a hypothetical question are sufficient, from a medical or surgical point of view, to cause and bring about a certain condition or malady, or he may be asked whether or not a given condition or malady of a person may or could result from and be caused by the facts stated in the hypothetical question, but he should not be asked whether or not such facts did cause and bring about such condition or malady. (*Illinois Central Railroad Co.* v. *Smith,* 208 Ill. 608; *Keefe* v. *Armour & Co.* 258 id. 28; *People* v. *Schultz,* 260 id. 35; *Cas-*

*taine* v. *United Railways Co.* 249 Mo. 195; 155 S. W. Rep. 38; *Sever* v. *M. & St. Louis Railroad Co.* 156 Iowa, 664; 137 N. W. Rep. 937; 44 L. R. A. [N. S.] 1200.) In cases where there is no dispute as to the manner and cause of the injury and no dispute that there was an injury sustained by reason of the acts of which complaint is made, this court has held that a physician may then directly testify that a later malady was or was not caused by the accident or original injury, upon the same principle that he may testify that death resulted from a certain wound. *Schlauder* v. *Chicago and Southern Traction Co.* 253 Ill. 154; *City of Chicago* v. *Didier*, 227 id. 571.

Dr. Olof Steffenson was permitted, over the same objections of plaintiff in error, in answer to a similar hypothetical question by defendant in error's counsel, to testify that the cause of the neurasthenia or of the condition found in the hypothetical patient was due to the accident.

The errors committed by the court in the admission of evidence, as aforesaid, must be regarded as very prejudicial to plaintiff in error. There is no disease more feared by the human family than cancer. The jury were allowed to consider in this case the testimony of Dr. Mowery that the defendant in error might some time in the future find that the tumor in her breast had developed into a fatal cancer. How much effect or weight that testimony may have had with the jury on the question of fixing the measure of her damages no one can say. They were directed by the instructions of the court to consider all the evidence bearing on the question of damages in fixing the amount of damages. The physicians in the case settled the question by their direct and positive testimony that the tumor and the neurasthenia or nervousness of the defendant in error were caused by the collision. The jury had nothing left to do but to proceed to award large damages under this evidence. It is a question for the jury, under the evidence in this case, to determine whether or not the defendant was guilty

of negligence, as argued by defendant in error. We are bound by the finding of the Appellate Court both upon the question of the defendant's negligence and as to the question whether or not the damages are excessive when there is no substantial error in the record and there is evidence in the record tending to show a liability. It is the duty of the court to consider the evidence, however, when the record shows substantial errors, for the purpose of determining whether or not the errors require a reversal of the judgment. For that purpose we have carefully considered all the evidence in the record, and our conclusion is that the judgment must be reversed and the defendant given an opportunity of a trial free from any substantial error.

In conclusion we will further say that the error assigned as to the giving of instruction No. 6 is not tenable. The defendant in error's counsel, however, were guilty of gross misconduct for the second time in their argument of this case to the jury, which, alone, is sufficient to cause a reversal of this judgment. It is not necessary to extend this opinion further by pointing out in detail such errors in the argument. They have been fully pointed out to counsel for defendant in error by the brief of plaintiff in error, and as the case will be remanded for further trial we do not desire to further refer to them, except to say that there was no occasion or excuse for the conduct of counsel in making such unfair arguments and that it will not be possible for them to reap any benefit for their client in this court by such arguments.

The judgments of the Appellate and circuit courts are reversed and the cause remanded.

*Reversed and remanded.*