(No. 13338.—Reversed and remanded.)

E. ARLINE OPP, Defendant in Error, vs. EDWARD B. PRYOR, Receiver, Plaintiff in Error.

*Opinion filed October 23, 1920.*

1. NEGLIGENCE—*personal tort action may be brought wherever defendant can be served with process.* A personal tort action may be maintained in any jurisdiction in which the defendant can be legally served with process unless the cause of action is prohibited by law or public policy or is against morals, natural justice or the general interest of the citizens of the State of the forum, but the right to recover will depend upon the law of the State where the cause of action accrued.

2. SAME—*what is waiver of objection that court appointing receiver of railroad company did not give leave to bring suit.* In an action for negligence against a railroad company which is in the hands of a receiver, an objection that the suit was brought without first obtaining leave of the court appointing the receiver is waived if not raised in any way in the trial court.

3. SAME—*common law imposes no duty on railroad company to maintain watchmen at crossings in residence districts.* The common law makes it the duty of a railroad company to use such precautions as will enable a traveler on the highway, if he exercises ordinary care, to ascertain in the night time the approach of an engine backing cars over a street crossing, but there is no general duty of a railroad company, in the absence of special conditions, to maintain watchmen or gates at public crossings in the residence districts of a city.

4. SAME—*what degree of care must be exercised by passenger in automobile.* One who is voluntarily riding in an automobile as a guest of the driver is not relieved of the duty to exercise ordinary care, and where the passenger has equal opportunity with the driver to observe danger in crossing a railroad track it is her duty to warn the driver, if possible, and under such a state of facts an instruction that the negligence of the driver cannot be imputed to the passenger is erroneous.

5. EVIDENCE—*what is presumed and what must be alleged and proved as to the law of another State.* It is presumed that the law of another State is the common law as administered by the courts of Illinois, but statutes and local usages of another State must be alleged and proved as facts, and where the common law is differently construed or applied in another State that fact must be alleged and proved.

6. SAME—*what facts may be included in hypothetical question to expert where facts are disputed.* Where an hypothetical question is put to an expert witness, if the facts are disputed the party examining the witness may include in the hypothesis only those facts which the evidence on his side tends to prove, and it is for the jury to say whether the facts stated have been proved or not and to accept or reject the opinion accordingly.

7. SAME—*what facts may be included in hypothetical question where facts are not disputed.* Where an expert witness is asked an hypothetical question and the evidence as to the particular matter inquired about is not disputed the question must contain all the facts, or the opinion, being based only on a partial statement of the facts, will be worthless and likely to mislead the jury.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

WILLIAM SHERMAN HAY, and CHARLES LEROY BROWN, for plaintiff in error.

LEO KORETZ, and JOHN A. IRRMANN, for defendant in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

At about 9:30 in the evening of July 17, 1915, there was a collision between a freight train of the Wabash Railroad Company, which was being pushed by an engine in a switching operation, and an automobile driven by Ethel Shambaugh, in which the defendant in error, with three other women besides the driver, was taking a ride in the city of Lafayette, Indiana, and the defendant in error being injured, brought her suit in the superior court of Cook county in this State against the plaintiff in error, Edward B. Pryor, receiver of the railroad company, and recovered a judgment for $5000, which was affirmed by the Appellate

Court for the First District. The record is in this court by writ of error on the allowance of a petition for a writ of *certiorari* to the Appellate Court.

A question as to the jurisdiction of the superior court is raised. The action was personal for a tort and might be maintained in any jurisdiction in which the defendant could be legally served with process, unless the cause of action was prohibited by law or public policy or against morals, natural justice or the general interest of the citizens of the State of the forum. (*Chicago and Eastern Illinois Railroad Co.* v. *Rouse*, 178 Ill. 132; 5 R. C. L. 1035.) A specific objection to the exercise of jurisdiction in this instance is that it was neither alleged in the declaration nor proved on the trial that the court appointing the receiver had given leave to bring the suit. The possession of the property of the railroad company was the possession of that court, but the prosecution of the suit against the receiver would not in any manner disturb his possession as an officer of the court, and the objection that leave of court was not first obtained before bringing the suit was not raised in any way in the trial court and was therefore waived. *Mulcahey* v. *Strauss*, 151 Ill. 70.

At the conclusion of the evidence the defendant moved the court to direct a verdict of not guilty and the court overruled the motion.

The collision occurred at the crossing of South Ninth street, which runs north and south and is crossed by double tracks of the railroad company running northeasterly. The train came from the southwest, and consisted of seven box cars next to the engine and two loaded coal cars in front, and the first loaded coal car struck the automobile. The declaration consisted of three counts, the first of which charged general negligence in managing the engine and train of cars. The second count charged that there was no light burning at the rear end of the engine and train of cars and that there was no bell ringing or any warning

or notice given. The third count charged that no watchman or gates were provided at the crossing.

The cause of action accrued in the State of Indiana and the right to recover depended on the law of that State. In the absence of proof it is presumed that the law of Indiana is the common law as administered by the courts of this State, and statutes and local usages of another State must be alleged and proved as facts. (*Crouch* v. *Hall*, 15 Ill. 263; *Tinkler* v. *Cox*, 68 id. 119; *Schlee* v. *Guckenheimer*, 179 id. 593; *Hogue* v. *Steel*, 207 id. 340; *Scholten* v. *Barber*, 217 id. 148; *Forsyth* v. *Barnes*, 228 id. 326; *Woodbury* v. *United States Casualty Co.* 284 id. 227.) If the common law is differently construed or applied in another State that fact must be alleged and proved. No statute of the State of Indiana or municipal ordinance of the city of Lafayette was alleged in the declaration, and the only evidence of a local law was that there was an ordinance of the city prohibiting the blowing of a steam whistle in the operation of trains in the night time. There was therefore no statutory duty to maintain a watchman or gates at the crossing, and neither by custom nor judicial decision has it ever been held that it is the general duty of railroad companies to maintain watchmen or gates at public crossings. There is a common law duty to exercise such care and use such precautions as will enable the traveler on the highway, if he exercises ordinary care, to ascertain in the night time the approach of an engine backing cars over a street crossing. There may be special conditions creating special dangers that might require a watchman or gates at a street crossing, as in the case of such crossing in a populous city in constant use by the public, but there was neither allegation nor proof of any such condition at this crossing in a residence neighborhood, so that no cause of action was proved under the third count.

Under the first count, which charged general negligence, and the second, which charged that no light was burning

and no bell or warning or notice was given of the approach of the train, the evidence was as follows: The crew of the freight train was made up of Bell, the engineer, McKay, the fireman, Driscoll, the conductor, and Kassen and Kline, the switchmen. The engineer was on the right side of the engine, looking back. The head brakeman, Kassen, was sitting on top of the first car next to the engine. Driscoll, the conductor, was sitting on the third car from the northeast end, which was a box car, and Kline, the other brakeman, was sitting on the northeast end of the northeast coal car nearest the crossing. Kline, Driscoll and Kassen were all carrying lighted lanterns with white lights. The train was going about five miles an hour and was under control and was stopped almost immediately after the collision, with one car past the crossing. South street runs east and west and crosses South Ninth street at right angles about 150 feet north of the crossing. At the intersection of these streets there was an electric arc light and a similar light about 350 feet south of the crossing and a red signal light above the crossing not giving much light but as a sign of the crossing. These facts were not contradicted. Kline, on the northeast corner of the coal car approaching the crossing, saw the automobile and testified that he waved his lantern from side to side as a warning, and when a collision was imminent he signaled the engineer to stop. The signal was repeated by Driscoll and Kassen, and the engineer saw the signals and stopped the train. Kline also said that he whistled by putting fingers of each hand in his mouth and blowing, on account of the ordinance against the steam whistle at night.

The plaintiff was sitting in the front seat of the automobile at the right of Ethel Shambaugh, who was driving. Belle Wood, Grace Wood and Mrs. Shambaugh, the mother of the driver, sat on the rear seat. The automobile turned into South Ninth street at the second street crossing north and was driven south toward the railroad tracks. Ethel

Shambaugh said the speed varied from eight to twelve miles
an hour, and a witness who at the time was driving an au-
tomobile about 60 feet back of the one in question thought
the speed was from ten to fifteen miles an hour and pos-
sibly a little faster, and the witnesses for the defendant es-
timated the speed at from fifteen to twenty miles an hour,
and one witness put it as high as thirty miles an hour. The
automobile was on the west side of the street, and shortly
before reaching the railroad tracks it was turned in the
street railway track in the center of the street. When with-
in 50 feet of the crossing there was no substantial or ma-
terial obstruction to the view, and the plaintiff was sitting
on the side toward the approaching train, which was on
the southerly track. The automobile passed over the north-
erly track and was struck by the northeast corner of the
first coal car. The witness who was driving a car about
60 feet back of plaintiff did not see any light on the first
coal car but saw a man with a white lantern on the first
box car, and could see that there were one or two men on
the car in front of the box car but could not see what they
were doing. Another witness driving a car farther north
saw the railroad lantern held by a brakeman on the top of
the box car. Belle Wood, who was on the back seat of
the automobile, said there were no lights on the railroad
car and she did not see anyone on it. Grace Wood and
Mrs. Shambaugh did not testify. Another witness for the
plaintiff, who was walking on the street, saw the train ap-
proaching when he got toward the tracks and noticed a
white light on the box car. The bell was ringing on the
engine at the other end of the train. Ethel Shambaugh,
who was driving the automobile, testified that she was an
experienced driver and had taught others to drive; that she
was familiar with the crossing and did not hear any whistle
or bell as she approached it; that there was a slight up-
grade at the crossing, and she lessened the speed of the car
and looked and did not see anything and then gave the car

more gas to go over the crossing. The plaintiff testified that she did not remember anything after they had been in front of a store a good many blocks away and did not do anything in connection with the driving at all. A doctor testified that she did not remember anything until six days after the accident. She had signed a statement on September 2, 1915, that she did not know at the time of the accident that there was a train approaching; that she considered Ethel Shambaugh, who was driving the car, a thoroughly competent driver and relied entirely upon her intelligence in driving the car, and as she approached the crossing she did not make an effort to look or listen for trains. At the trial, while she said she did not remember anything about the collision, she said that she left the driving and management of the automobile entirely to the driver and did not do anything in connection with it.

Although there was no dispute of the fact that Kline had a lighted lantern, and he testified that he signaled by waving the lantern back and forth, there was the testimony of Ethel Shambaugh that she looked and did not see anything and the testimony of other witnesses that the light they saw was on the box car, so that the court could not say, as a matter of law, that there was no evidence of negligence on the part of the defendant or ordinary care of the plaintiff.

On the trial plaintiff called a doctor as an expert, who said that he testified in two or three personal injury cases each week and that this was the third time he had testified for the plaintiff's attorney. The attorney asked his opinion upon a hypothesis that the accident occurred with the consequent physical injuries which had been testified to, and that at the time of the trial, nearly three years after the accident, the plaintiff had dizzy spells, pains in the back of her head, pains in her back starting at the right of the spine and running around the front and down the front part of the body, and that after the accident she had exaggerated

reflexes and was pale and sick-looking and a natural process of nature was delayed. Assuming these facts the doctor was asked to give an opinion as to whether that condition could have been caused or brought about by the injury received on July 17, 1915. The question was objected to because it did not include in the hypothesis all of the facts proved, and the objection being overruled, the witness answered that in his opinion the condition stated could be the result of the injuries and that the condition was permanent. The plaintiff had testified that after the accident she was nervous and irritable and was still nervous and unable to sleep, and that the gums were shrunken away from her teeth, and it had been proved and not contradicted that before the accident she had been treated for dysmenorrhea, which caused extreme nervousness and had a disturbing mental influence, and that she had had other illnesses and disorders, and none of these undisputed facts were included in the hypothesis.

Expert testimony on matters not within common knowledge and experience is necessary to enable juries to determine questions of fact submitted to them, and there are experts of great knowledge and high personal standing whose opinions delivered without bias are a substantial aid to the attainment of justice. That class of evidence, however, is generally discredited and regarded as the most unsatisfactory part of judicial administration. This is with good reason, because the expert is often the hired partisan and his opinion is a response to a pecuniary stimulus. The opinion has the sanction of an oath but lacks the substantial safeguard of truth applied to testimony concerning facts observed by a witness which is afforded by the criminal law since the opinion is the result of reasoning, and no one can be prosecuted for defective mental processes. The field of medicine is not an exact science, and the expert being immune from penalties for perjury, his opinion is too often

the natural and expected result of his employment. The objections to that character of evidence can only be overcome or obviated by control by the court of the witness and the examination and such supervision as will at least fairly present the facts upon which an opinion is called for. If the facts are disputed the party examining the witness may include in the hypothesis only those facts which the evidence on his side tends to prove, and it will be for the jury to say whether the facts stated have been proved or not and accept or reject the opinion accordingly. If the evidence as to the particular matter inquired about is not disputed it is obvious that the hypothetical question must contain all the facts or the opinion will not only be worthless but be likely to mislead the jury. If counsel selects from the undisputed facts those which are most favorable to his party and obtains an opinion thereon, the jury may forget the partial nature of the premises and adopt the opinion of the witness on the partial statement. (1 Wigmore on Evidence, sec. 682.) In *Fuchs* v. *Tone*, 218 Ill. 445, it was held that a question was properly refused where a considerable portion of the services which the plaintiff was employed to perform was not included in the question, and it was held in *McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473, that a hypothetical question must not ignore material facts which affect the opinion. The opposite party may cross-examine and supply the needed facts, but that ought not to be required and would not obviate entirely the impression created by the first opinion. The argument that the ruling of the court is sustained by *Fellows-Kimbrough* v. *Chicago City Railway Co.* 272 Ill. 71, and *Heineke* v. *Chicago Railways Co.* 279 id. 210, misses the point of the objection. It was there held that an expert could be asked for his opinion as to whether certain things might cause or bring about a certain condition, but it was not decided that a question stating part of the undisputed facts proved was proper. The ruling was wrong.

The court gave at the instance of the plaintiff the following instruction:

"If you believe from a preponderance of the evidence that the plaintiff was a guest in the automobile at the time of the accident, at the invitation of the owner, without authority to direct or in any manner control the conduct of the driver of the automobile, and that before and at the time of the accident she was in the exercise of ordinary care for her own safety, then the negligence of the driver of the automobile, if any, could not be imputed to her."

It was essential for the plaintiff to prove that she was in the exercise of ordinary care for her own safety in approaching and going upon the crossing, and she was not relieved from that duty because she was riding in an automobile. If she exercised such care any negligence of Ethel Shambaugh could not be imputed to her, but she would be responsible for her own negligence. The plaintiff sat at the right of the driver in front, with at least equal opportunity to observe danger and the approach of the train, and being bound to prove the exercise of ordinary care by herself, it was no less her duty than that of the driver to observe and avoid danger, if practicable, and to warn the driver. (*Flynn* v. *Chicago City Railway Co.* 250 Ill. 460; *Pienta* v. *Chicago City Railway Co.* 284 id. 246.) The plaintiff testified that she had no remembrance of the occurrence, and her only reliance to prove her ordinary care was the testimony of Ethel Shambaugh and Belle Wood as to what they could see. If Ethel Shambaugh was not guilty of any negligence in driving the car and could not see or hear anything to indicate the approach of the train, it would, perhaps, be a fair inference that the plaintiff could not, but the instruction was inconsistent and contradictory in substantially telling the jury that although Ethel Shambaugh did not exercise ordinary care for the safety of those in the automobile yet the plaintiff might have been in the exercise of such care herself, without the slightest

evidence that she did anything at all. As a general rule, one who has no control or authority over another is not responsible for the negligence of the other, but instructions should be given as an aid to the jury in deciding the case, and in view of the evidence this instruction was wrong. The only possible ground for recovery was the testimony of Ethel Shambaugh as to her own conduct and care in the management of the automobile. Three directly contradictory instructions were given at the request of the defendant, but they did not cure the error, and apparently the erroneous instruction was adopted by the jury in deciding the case.

Other errors are assigned and argued concerning matters not likely to arise on another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*