(No. 19138.— )

WALTER WOLCZEK, Defendant in Error, *vs.* THE PUBLIC SERVICE COMPANY OF NORTHERN ILLINOIS, Plaintiff in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 15, 1931.*

FARMER, J., dissenting.

GARDNER, FOOTE, BURNS & MORROW, (WALTER M. FOWLER, of counsel,) for plaintiff in error.

JOHN A. BLOOMINGSTON, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendant in error, by his next friend, filed in the circuit court of Cook county his suit for damages for personal injuries sustained by reason of an electric shock and burns received by him while on one of the high voltage electric line towers of plaintiff in error. The injury occurred on May 1, 1925, at which time he was eleven years of age. The jury assessed his damages at $30,000. Judgment entered thereon was affirmed by the Appellate Court for the First District, and the cause is here on writ of *certiorari.*

The action is based on two counts of the declaration. These charge that at the time of the injury the defendant negligently maintained an attractive nuisance in the form of an unguarded steel tower supporting uninsulated wires which carried a high voltage of electricity through a forest preserve of Cook county where children were known to play, and that the defendant knew, or should have known, that this tower was attractive and alluring to children. It is charged that the defendant failed to exercise ordinary care to guard and protect the towers and wires so that children of tender years could not climb upon the structures and reach the wires, which it was alleged were rendered accessible by the structure and a ladder thereon. The second count also charged negligence on the part of the defendant in failing to insulate the wires.

The undisputed evidence shows that plaintiff in error in 1916 erected this tower and others on a right of way which it purchased through a farm of approximately 137 acres, which farm was in 1922 purchased by the Forest Preserve District of Cook county. High tension wires carrying 12,000 volts of electricity were strung on these towers. The lowest wire was thirty-six feet from the ground. Access to this 137-acre forest preserve was had by a road entering from Halsted street and passing at the time of the accident within a few feet of the base of the tower on which the accident occurred. The tower was erected on a concrete base about three and one-half feet square. The tower had four main columns or legs. These four legs were constructed of V-shaped galvanized steel called "angle-iron." The angle-irons measured three and one-half inches on each side or face and were of a thickness of five-sixteenths of an inch. Horizontal braces connected them about two feet from the concrete base, and above those braces strips of V-shaped steel or angle-iron, designated in the record as "struts," ran diagonally at an angle of forty-five degrees from one leg to another on each side of the tower to the top of it. Each of these struts was four and one-half feet long, measured two and one-half inches on each side or face, and was of a thickness of about one-fourth of an inch. They were so attached to the legs of the tower that the outside of the angle pointed away from the tower. The distance along one leg of the tower from the point where a strut joined it to the point where the next strut joined the same leg was six feet. The other end of the first mentioned strut was attached to the other leg on the same side of the tower at a point three feet above the point of attachment of the strut to the first mentioned leg. About fourteen feet above the ground on one of the legs a ladder was formed by fastening to it loops made of small iron bars. This ladder extended to the top of the tower. The tower carried three cross-bars, the first

of which was thirty-six feet from the ground. On those cross-bars, and attached thereto by insulators, were strung the wires. The wires were a little less than two feet from the side of the tower. The right of way of the plaintiff in error was not fenced and the tower here involved bore no danger sign, though the evidence shows that one had been put on it and later taken off while the tower was being painted and not re-attached to it. There were five of the diagonal struts on each side of the tower between the ground and the first step of the ladder.

On the day of the accident nine children, including defendant in error, composed a party who went into the forest preserve for a picnic. There were three boys and six girls. The children entered the preserve along the road referred to, passed the tower to a cleared space, where they ate their lunch. The evidence of the children showed that they played games and climbed trees and had started home when they came to this tower. The oldest member of the party, George Stevenson, a boy twelve years of age, climbed to the top of it twice. While he was on the tower the second time defendant in error commenced to climb it. He testified that he climbed the struts by placing his feet on the lowest diagonal one and holding onto the second one with his hands until he reached it with his feet and then continued to climb in the same way until he reached the ladder. He also testified that it was not hard to climb. The Stevenson boy testified it was "kind of" hard because there was no ladder. Four of the girls in the party testified to climbing the struts of the tower. Lucy Marabain, at that time thirteen years of age, testified that when they saw what she characterized the "big pole" they started to have some fun on it and were climbing up and down having some fun on it; that three or four of the girls were climbing on the tower that day, and she testified she climbed about eight feet from the ground and climbed three of the iron bars, (evidently meaning struts,) and that there were

three or four of the girls about as high as she was. Roxey Marabain, then nine years of age, testified that they were playing around the tower when defendant in error and the Stevenson boy went up to the top; that the girls were hanging around the tower and just climbing up because it was easy to climb; that she did not think any of them knew it was dangerous, and that she did not, at least. Dorothy Stevenson, then ten years of age, testified that the girls were all climbing up on the tower except the two little girls; that they were climbing it just for fun; they were climbing about two irons away from the bottom, "just monkeying around on the iron cross-bars;" that she did not get as high as the ladder. Jeanette VanSoest, then eleven years of age, testified she was climbing up the pole when Walter (the defendant in error) was hurt; that she had climbed to the third bar on the tower.

The evidence of these children shows that when defendant in error had climbed to a point near the first wire he put up his hand while calling to them and they saw a flash and heard a loud report, and he fell to the ground. The evidence shows that he was seriously injured. His right arm was so badly burned that it became gangrenous and had to be amputated near the shoulder, and he received severe other burns on his chest and feet and injury to his heart. Thomas Little, a caretaker for the forest preserve district, testified that he had seen children climbing on the tower at different times and playing around in the vicinity of the tower; that there is a playground close by the tower; that the children he had seen were climbing around the lower part of the tower and that he told them to get off at different times but that he had never seen any of them climb as high as the ladder. He was not present on the day of the accident. He also testified that he did not notify plaintiff in error of what he had seen.

Plaintiff in error contends, first, that the court erred in refusing to instruct the jury to return a verdict for the de-

fendant for the reason that there was no evidence to support the charge that the tower was an attractive nuisance and therefore no evidence of negligence on the part of plaintiff in error, and that there was no evidence of the exercise of due care on the part of defendant in error; second, that errors occurred on the trial of the cause requiring a re-trial.

The first question is whether the evidence of the plaintiff, when considered with all its reasonable inferences and intendments, in its aspect most favorable to his case, tended to support the charges of the declaration. This evidence has been briefly set out in this opinion.

The law fixes a different standard of liability in case of injury to children going upon premises where there is a dangerous agency attractive to children, than that which applies to adult persons. Where the owner creates upon his premises a dangerous object which from its nature and location has a tendency to attract onto the premises children who from childish instincts are drawn into the danger, the law requires such reasonable precautions as the circumstances admit of to prevent them from playing with the thing or to protect them from injury from it. It is likewise the rule that the owner of private grounds is under no obligation to keep them in any particular state or condition to promote the safety of trespassers, intruders, idlers, bare licensees, or others who come upon them without invitation, either expressed or implied. This rule applies equally to adults and children. (*Follett* v. *Illinois Central Railroad Co.* 288 Ill. 506; *McDermott* v. *Burke,* 256 id. 401.) The owner of land, however, who allows children to play on his premises must use ordinary care to keep the premises in a safe condition, for the children, being without judgment, are likely to be drawn by childish curiosity into places of danger. (*Ramsay* v. *Tuthill Material Co.* 295 Ill. 395.) This rule applies where the owner expressly or by implication invites children onto the premises. There being no

evidence here that the plaintiff in error knew of or expressly consented to the presence of the children on its towers, the rule as to express invitation does not apply. The rule recognized in this State as to implied invitation is, that where the owner of the premises maintains a dangerous condition or thing of such a character that he may reasonably anticipate that children, who by reason of tender years are incapable of exercising proper care for their own safety, are likely, because of their childish instincts, to be attracted to the dangerous thing and thereby exposed to dangers, he is required to use reasonable care to protect them from injury, provided it is shown that such dangerous condition or thing is so located as to attract children from the street, playground or place where they have a right to be. Where such an agency is so located it constitutes an implied invitation to such children to come upon the premises and they are not, in law, considered trespassers. The rule does not apply where the owner maintains something for his own use which, though dangerous, would be found by such children only by going upon the premises as trespassers. In other words, to impliedly invite children onto the premises it is necessary that the dangerous agency, with its alluring and attractive character, be so placed as to attract the children there. (*McDermott* v. *Burke, supra; St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Bell,* 81 Ill. 76.) If there is such an implied invitation to go upon the premises the child is not considered, in law, a trespasser but an implied invitee. Stated in other language, if the owner maintains an agency of such a character and in such a place that he, by reason of his knowledge of those facts and the facts of knowledge common to all concerning the habits of children, naturally and reasonably knows, or should know or anticipate, that children will probably be attracted onto the premises by that agency and will probably come upon his premises unless he warns them not to do so, such facts bring the case within the rule adopted in this and other

States and constitute an implied invitation to children to do the thing which he should reasonably anticipate they are likely to do. Under these circumstances the owner is required to use reasonable care to avoid injury to such children. That duty arises out of the invitation which the law implies and rests upon sound and just reason. Facts pertaining to the thing and its location from which such an invitation is to be implied are to be proved as other facts are proved. The existence of such implied invitation may be disproved by evidence showing that the owner gave notice or warning which such child can understand to keep off the premises. Proof of such warning destroys the implication of the existence of an invitation, and if the child goes on the premises notwithstanding such warning he goes as a trespasser and the owner owes him no duty to protect him against danger. The above mentioned rule is based on a principle long engrained in the decisions of this court, that justice requires recognition of the fact that a child of tender years should not be held to the same accountability as an adult. This is a sound doctrine, long accepted by this court and calculated to make men more considerate of little children. It is based on the humane consideration that where one maintains on his premises a dangerous agency, so located as to attract children from a place where they have a right to be, and that such owner knows, or should know, of its dangerous character and of its attractiveness to children and the probability of injury to them by it but does not use reasonable care to protect or warn them against it, then he is guilty of negligence. There has been no deviation from this rule since the case of *City of Pekin* v. *McMahon,* 154 Ill. 141. (*McDermott* v. *Burke, supra; Ramsay* v. *Tuthill Material Co. supra; Stedwell* v. *City of Chicago,* 297 Ill. 486; *Deming* v. *City of Chicago,* 321 id. 341; *Follett* v. *Illinois Central Railroad Co. supra; Darsch* v. *Brown,* 332 Ill. 592.) Cases cited by plaintiff in error are to be distinguished on the facts and are not

to be taken as a modification or limitation on this rule. Of such case is *Burns* v. *City of Chicago,* 338 Ill. 89, where it was held that the evidence concerning a tubular steel electric light pole did not tend to prove that that pole was attractive to children. In that case it was also held that the pole was not the proximate cause of the injury but that the boy climbing it was induced to do so by reason of wagers made between himself and other boys. In *Darsch* v. *Brown, supra,* the judgment was reversed and the cause remanded because an instruction allowed the jury to consider matters not charged in the declaration.

Counsel cite *New York, New Haven and Hartford Railroad Co.* v. *Fruchter,* 260 U. S. 141, as authority against a holding that there was any evidence in this case that the tower involved was an attractive nuisance. That case was based on the holding of that court in *United Zinc and Chemical Co.* v. *Britt,* 258 U. S. 268. In both of these cases it was held that there was no evidence of an implied invitation to the plaintiff to go upon the premises involved. Three of the justices dissented in the *Britt case,* holding as correct the rule theretofore followed by that court, and long established in this State, that where a dangerous agency is attractive to children and the owner of such agency knew, or should have known, of its dangerous character and of such attractiveness but gave no protection or warning against it, recovery should be allowed.

Considering whether there is any substantial evidence which, when considered most favorably for defendant in error, tends to show an implied invitation to children to play on this tower, we have seen that a caretaker of the forest preserve district had seen other children climbing on the bottom bars of this tower and had told them to get off. Four of the six girls, the oldest thirteen years of age, of the party present at the time defendant in error was injured, climbed as high as eight feet on the struts of the tower. They testified that they were playing and climbing

around the tower to have fun. The road extending through the forest preserve passed within a few feet of this tower. The children while playing in the forest preserve were where they had a right to be. The struts of this tower were easy to climb. The warning sign had been taken off the tower and not replaced. The tower was not fenced and bore no warning sign of any character. Can it be said that reasonable minds will agree, on consideration of all this evidence, that it, with its reasonable intendments and inferences, when considered in its aspect most favorable to the plaintiff's cause, does not constitute any substantial evidence that the tower was especially attractive to children? If such can be said then it must be held as a matter of law that this material allegation of the declaration is unsupported by proof and that the trial court erred in refusing to give an instruction for the defendant. We are unable to say, however, that this does not constitute any substantial evidence of the attractiveness of the tower to children. We are of the opinion, therefore, that the record contains evidence tending to show that the tower was attractive to children, that there was no warning, and that such evidence tended to prove an implied invitation to children to climb upon it. It is not contended that the defendant in error was a trespasser before he went upon the tower. While the tower was located on the right of way of plaintiff in error 100 feet wide, the line extended through the forest preserve, and there is no contention that the children were trespassers while on the right of way. The forest preserve district was a public playground. Under the statute by which the forest preserve district was created, (Laws of 1913, p. 385,) it is empowered to procure land for the purpose of protecting and preserving flora and fauna and scenic beauties within such districts and to protect and preserve the lands thereof, as nearly as may be, in their natural condition for the purpose of education, pleasure and recreation of the public. It follows that, subject to the restrictions that the flora and

fauna and natural condition of such lands shall be protected and preserved, the public, including defendant in error, had the right of free access thereto for education or recreation. Such lands of the forest preserve district are therefore, subject to those limitations, public playgrounds. Taking, then, the evidence of the defendant in error in its most favorable light, we are constrained to hold that it tends to show that he was attracted from this public playground, where he had a right to be, onto the tower of plaintiff in error and was an implied invitee—not a trespasser—and that plaintiff in error owed him the duty to use reasonable care to protect him against the dangerous character of these towers.

Plaintiff in error also argues that even though this tower was attractive, the duty rested on the defendant in error to offer proof which tended to show that he was in the exercise of ordinary care for his own safety according to the intelligence and capacity of a boy of his age, and that there is no evidence in the record tending to establish due care on his part. As hereinbefore stated, the rule in this State is that children are not held to the same accountability as adults. This rule is applicable alike in determining whether the child is guilty of contributory negligence or of trespass. At common law a child under the age of seven years was conclusively presumed not responsible for his acts. Between the ages of seven and fourteen years he was still so presumed to be, but this presumption might be overcome by proof of the intelligence or capacity of the child. That rule has been and is recognized in this State. In *McDonald* v. *City of Spring Valley*, 285 Ill. 52, it was held that the statute requiring written notice to a city within six months after an injury as a condition precedent to the right to sue such city does not apply to a child seven years of age where such child is physically and mentally incompetent to give such notice. In *Maskaliunas* v. *Chicago and Western Illinois Railroad Co.* 318 Ill. 142, it was held that the statute making it a misdemeanor to climb upon a railroad car

without permission does not apply to a child under the age of ten years unless the presumption of the common law rule was overcome by proof as to the physical and mental capacity of the child. In *Morrison* v. *Flowers,* 308 Ill. 189, the same rule was applied concerning the application of the provision of the Motor Vehicle act which declares travel above a certain rate of speed to be *prima facie* evidence of negligence. In *Richardson* v. *Nelson,* 221 Ill. 254, and in *Chicago, St. Louis and Pittsburgh Railroad Co.* v. *Welsh,* 118 id. 572, this court applied the common law rule that a child under seven years of age is incapable of such conduct as will constitute contributory negligence. The rule established in this State has likewise been applied in numerous other jurisdictions. (*McCoy* v. *Texas Power and Light Co.* 239 S. W. (Tex.) 1105; *Znidersich* v. *Minnesota Utilities Co.* 155 Minn. 293; *Electric Light Co.* v. *Healy,* 65 Kan. 798; *Tucker* v. *Draper,* 62 Neb. 66; *Bjork* v. *Tacoma,* 76 Wash. 225; *Birge* v. *Gardner,* 19 Conn. 507; *Mackey* v. *City of Vicksburg,* 64 Miss. 777; *McEldon* v. *Drew,* 138 Iowa, 390; *Powers* v. *Harlow,* 53 Mich. 507; *Whirley* v. *Whiteman,* 1 Head, (Tenn.) 610.) In this case, when the defendant in error was at the base of the tower he was where he had a right to be. He testified that he did not know that there was danger in climbing the tower; that he did not see any sign of warning and was not warned by anyone, and that he did not know anything about electricity or electric wires. He testified that he was in the fourth grade at school at the time of the accident; that he had ridden on a street car and had seen the flashes of the fire but that he did not know about electricity; that he did not know how the street car was running, and that they did not have electric lights in his home before the accident. This evidence, together with the common law presumption which obtains as to a boy under fourteen years of age, justified the case going to the jury on the question of contributory

negligence on the part of the defendant in error, and the court did not err in refusing to direct a verdict.

It is also argued that even though this be so, the judgments of the Appellate and circuit courts should be reversed and the cause remanded for a new trial because of errors committed on the trial. The grounds on which this point is urged are, that the court erred in instructing the jury and in rulings on evidence and that counsel for the defendant in error committed prejudicial error in argument. Complaint is made of instruction No. 1 given on behalf of defendant in error, which told the jury that "if the jury find that the evidence bearing upon the plaintiff's case preponderates in his favor, although but slightly, it would be sufficient for the jury to find the issues in his favor." This instruction has been repeatedly condemned as argumentative and as tending to emphasize the weight of the plaintiff's evidence. (*Reivitz* v. *Chicago Rapid Transit Co.* 327 Ill. 207; *Teter* v. *Spooner,* 305 id. 198.) While in those cases the judgment was not reversed because of such erroneous instruction, the plaintiff's evidence in those cases clearly outweighed the evidence of the defense. There is not such a disparity between plaintiff's and defendant's evidence in this case as in those cases, and the instruction was error.

Plaintiff in error complains of instruction No. 2. This instruction is as follows:

"The jury are instructed that if you find for the plaintiff in this case, then in determining the amount of damages the plaintiff is entitled to recover, if any, you should take into consideration all the facts and circumstances in evidence before you; bearing upon the plaintiff's injuries, if any, resulting directly from the accident herein sued on, the nature and extent of the plaintiff's injuries, if any, his pain and suffering resulting from such injuries, if any, and also such future pain or prospective pain and suffering and loss of health and strength as you may believe from the evidence, if any, he has sustained, or will in the future sustain by

reason of such injuries; and also such sums as you may believe from the evidence, if any, the plaintiff will lose in earnings after he becomes twenty-one years of age, if any, and give him such sum as in your judgment under all the evidence and instructions of the court as will compensate him for the injuries he has sustained, if any, are claimed and alleged in the declaration herein."

The first objection to this instruction is directed to the language telling the jury that it is proper to consider loss of earnings of the plaintiff after he arrived at twenty-one years of age, and the argument is that there is no evidence on which loss of earnings after twenty-one years of age could be based. Counsel cite in support of this contention, *Illinois Iron and Metal Co.* v. *Weber,* 196 Ill. 526. The same language was used in that instruction, but the opinion there points out that there was no evidence of permanent injury to the plaintiff in that case and therefore no evidence upon which a consideration of such loss of earning power could be based. Here the evidence shows that defendant in error lost his arm near the shoulder and his evidence tends to show that the shock caused permanent dilatation of his heart. There is in this record, therefore, evidence that his injuries are permanent. While the record did not, and clearly could not, show what this boy would earn after he became twenty-one years of age, it does show with equal clearness a loss of his arm, which is a permanent injury, and it is evident that his earning power will at that time be materially reduced. It cannot be determined from this record what, if any, allowance the jury made for loss of earning power. It is conceded that it would not be proper to permit him to recover for loss of earning power during his years of dependency on his parents. The instruction is not open to this objection. It is also objected that the language permitting the jury to take into consideration facts and circumstances in evidence before it did not properly confine the determination of the amount of damages

to the evidence. Counsel in support of this contention cite *Muren Coal and Ice Co.* v. *Howell,* 204 Ill. 515. In that case the instruction held to be error told the jury that it might take into consideration "the pecuniary injuries resulting to the widow and next of kin, if from the evidence you believe there is a widow and next of kin and that they have suffered pecuniary loss, * * * and give to the plaintiff such a sum as in your judgment will fairly compensate the widow and next of kin," etc. This instruction gave the jury the right to award such a sum as damages as in their judgment would compensate the widow and next of kin without reference to the evidence of damage and was erroneous. The same objection obtained in an instruction considered in *Illinois Central Railroad Co.* v. *Johnson,* 221 Ill. 42. The instruction here is not open to that objection but confines the power of the jury to award damages to the evidence before it bearing upon the plaintiff's injuries.

Plaintiff in error also complains of defendant in error's fourth instruction, which is:

"The jury are instructed that a boy of the age of plaintiff is only required to exercise that degree of care and caution that a boy of his age, intelligence, capacity and experience would exercise under the same or similar circumstances."

The argument is that this instruction in effect told the jury that if any boy, heedless or otherwise, would have climbed this tower, then the plaintiff was in the exercise of ordinary care. We are of the opinion that the jury could not have so construed the instruction. It in effect told them that the plaintiff was required to exercise the care and caution that a boy of his age, intelligence, capacity and experience would exercise under the same circumstances. This is the rule recognized in this State. *Hartnett* v. *Boston Store,* 265 Ill. 331; *McGuire* v. *Guthmann Transfer Co.* 234 id. 125; *Star Brewery Co.* v. *Hauck,* 222 id. 348.

Plaintiff in error also assigns as error the action of the court in modifying the 27th instruction offered by plaintiff

in error. This instruction told the jury, in effect, that a structure maintained by the owner on his own premises, to be attractive and alluring so as to impose on the owner any duty under the law toward children going upon or playing therewith, must be so situated and so attractive that its presence amounts to an invitation on the part of the owner to the children to go upon and play with it. The court modified the instruction by striking out the word "invitation" and supplying the word "inducement." We have stated in this opinion the rule adopted in this State concerning attractive nuisances. This rule should be carefully applied. This instruction did not properly state the rule. While an implied invitation is one raised by the law, the instruction was likely to mislead the jury. Nor should it have been given as amended, as it was not then within the rule.

Counsel for plaintiff in error argue that it was error to permit the witness Orlando Scott, a physician, to answer the hypothetical question put to him by defendant in error's counsel. Three reasons are assigned: First, the question did not contain all the facts proved; second, the answer amounted to no more than a speculation; and third, the answer was an invasion of the province of the jury. The question was asked in plaintiff's case in chief, and up to that time there had been no dispute in the evidence. The rule is, that where an expert witness is asked an hypothetical question and the facts are not disputed, the question must contain all the material facts or the opinion is likely to mislead the jury. Such question must not ignore material facts which affect the opinion given. While the opposite party may cross-examine the witness he is not required so to do, as cross-examination may not remove the impression of the first answer. (*Opp* v. *Pryor*, 294 Ill. 538; *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473; *Fuchs* v. *Tone*, 218 id. 445; 1 Wigmore on Evidence, sec. 682.) This hypothetical question, and the objections thereto, with the colloquy between court and counsel, cover eighteen pages of the ab-

stract and it would serve no useful purpose to set it out in full here. The question called upon the witness to state whether there was a causal relation between the accident, as shown by the evidence, and the condition found by the witness, who had testified that just before the trial he had examined the plaintiff and had taken X-ray pictures of his chest. He was asked to give his opinion as a medical expert. On objection of counsel matters omitted from the question when first asked were included, and we are of the opinion that it included all material facts appearing in evidence and was not open to this objection. As to the objection that the answer amounted to no more than a speculation, it is sufficient to say that the answer was the opinion of the witness, who had been qualified as an expert and was based on evidence in the record. The third ground of objection is that the answer invaded the province of the jury. It is argued that the statements of the witness that there was a direct causal relation between the accident and the conditions found and that in all cases of severe electric shock there is a dilatation of the heart, were, in effect, telling the jury that such conditions were true in this case. Where there is no dispute as to the manner and cause of the injury or that the injury was sustained, a physician may directly testify that in his opinion a condition later found was caused by the injury. (*Fellows-Kimbrough* v. *Chicago City Railway Co.* 272 Ill. 71; *Schlauder* v. *Chicago and Southern Traction Co.* 253 id. 154; *City of Chicago* v. *Didier,* 227 id. 571.) In this case there is no dispute as to the facts of the accident or that injury resulted therefrom. The witness, as an expert, stated as his opinion that in all cases of severe electric shock a heart dilatation results. He had also testified that he had found, both by clinical examination and X-ray pictures, that the plaintiff at the time of the trial was so affected. We find no error in the admission of this testimony.

It is also objected that the court erred in excluding testimony offered by plaintiff in error to prove that poles or posts twenty-five feet high were used in other places for the purpose of carrying electric wires. This evidence could not be material to the issue as to plaintiff in error's negligence in maintaining the tower in this case or the defendant in error's contributory negligence in going upon it, as there is no similarity between such poles and the towers in question here. In the cases cited by counsel the courts were considering proof concerning the usual manner of conducting the same kind of business or the doing of the same kind of act. It was not error to refuse to admit such testimony.

Plaintiff in error offered also to prove by the head of its claim department, who had served in that capacity for eighteen years, that no other claims had been presented for any like injuries on this tower. An objection thereto was sustained, and this is assigned as error. The evidence shows that these towers were erected on this right of way in 1916 and had been maintained without change in their condition from that time until the time of the accident. The forest preserve district had at the time of the trial owned for six years the land through which the line extended and on which six towers of like character had been erected. During these six years the land was public land for recreation of the public. It is argued that evidence of lack of accidents was competent, as affecting the question of notice or knowledge on the part of plaintiff in error that the towers might be dangerous and as tending to show it had no reason to suppose the towers were attractive to children. One of the material issues of plaintiff's case is that the defendant knew, or should have known, that the tower in question was a dangerous agency, attractive to children. It has frequently been held that evidence of other accidents by the same agency in the same condition is competent, not for the purpose of showing independent acts of negligence but for the limited purpose of showing that the unsafe thing or condition caus-

ing the particular accident caused others, and that the occurrence of such other accidents tends to show notice to the owner of such dangerous agency. (*Moore* v. *Bloomington, Decatur and Champaign Railroad Co.* 295 Ill. 63; *City of Chicago* v. *Jarvis*, 226 id. 614; *City of Bloomington* v. *Legg*, 151 id. 9.) It is but the just corollary of this rule that it be held competent to show that no similar injuries had occurred, provided the proof shows that the condition or thing contributing to the particular accident has been unchanged. Here the proof bore directly on the knowledge of the plaintiff in error of the attractiveness of this tower to children, and therefore bore directly on the charge of negligence on the part of plaintiff in error in permitting the towers to remain unfenced and unguarded. Particularly in a case where sympathies are naturally excited by reason of the tender years of the injured child this evidence was material and of substantial importance and it was error to refuse to admit it.

It is also argued that counsel for defendant in error erred in his argument to the jury. These complaints are, first, that counsel argued the law to the jury and that an objection thereto was overruled. The record discloses that while the court did not refuse counsel the right to argue his version of the law, it was clearly stated to the jury that they were to be bound by the law as given them by the court. We are of the opinion, therefore, that this did not result in prejudicial error.

Counsel also cite as error in argument the following argument of counsel for defendant in error: "Now, how long do you have to consider the question of whether or not that was an allurement to children, and as to whether or not it was dangerous, and as to whether or not it was guarded or protected as it should have been? Why, you don't have to spend a second on that, do you? And if you don't, why, then, the answer to this case is plain and clear and definite. It is just as clear as clear can be. It is just

as clear as though I had taken a rattlesnake out there into the forest preserve and turned it loose in the midst of a lot of boys who were playing ball in the forest preserve, and I would be no more culpable there than this company were then." Objection was made to this argument, which was overruled, and counsel for defendant in error continued as follows: "I am not comparing this company to a rattlesnake. I am simply making the comparison as to danger. A rattlesnake is only an evidence, is only a dangerous instrumentality, and I am likening it to any dangerous instrumentality that is set down where children are. I say nothing against this Public Service Corporation except that they were negligent." This argument is attacked as prejudicial and in no way based on the evidence. Such argument was prejudicial. Counsel's argument that he would be no more culpable were he to turn loose among playing boys a rattlesnake, in effect charged plaintiff in error with like culpability. This was highly improper and would naturally in a case of this character inflame the minds of the jurors. While counsel attempted to explain that he was simply making a comparison as to the danger, the comparison was at least inapt. The high tension wire was not set down among children playing but was at least thirty-six feet above the ground. We are unable to see that this erroneous argument did not contribute materially to the return of this large verdict.

For the errors found in the record the judgments of the Appellate and circuit courts must be reversed and the cause remanded for a new trial. *Reversed and remanded.*

Mr. Justice Farmer dissenting: I do not agree that the errors indicated in the majority opinion are of sufficient importance to require a reversal of the judgment. In my view of the case this judgment should be affirmed.