Erma M. Phillips, Appellee, v. James S. Brown, Appellant.

Gen. No. 9,037.

Opinion filed May 15, 1936.

ECKERT & ECKERT, of Freeport, for appellant; RICHARD E. KEOGH, of counsel.

GREEN & WHEAT, of Freeport, for appellee.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

This is an action of malpractice brought by appellee against appellant. The appellant is a practicing dentist in the city of Freeport. He graduated in his profession from Northwestern University and was licensed to practice dentistry in the State of Illinois, in 1902. He has been engaged in that profession since said date. In the early part of the evening of August 7, 1932, which was on Sunday, appellant received a telephone call from appellee stating that she was suffering from a toothache and was in great pain, and requesting him

to go to his office where she might come for treatment. Appellant did so, and met the appellee at his office that evening sometime between the hours of eight and nine o'clock. Appellant says the tooth had an abscess on it and was so sore that he could not treat it without first anesthetising it. This was done hypodermatically by injecting an anesthetic at the gum line with a hypodermic needle. When the tooth was anesthetized, appellant removed the enamel from the top of the tooth. He claims the tooth was decayed to the center and that he then used an excavator, which is a spoon-like instrument, and with this instrument dug out and removed the decayed pulp from the tooth; that when he began to remove the decayed pulp he discovered pus coming from this area. Appellant claims that he cleaned out the tooth, treated it, gave appellee anti-pain capsules, directed her to return home and keep cold packs applied to the face and neck, and to come to his office the following day. She did not come to his office, but telephoned him and he went to her residence. He states that her jaw was swollen and an examination of the left side of her mouth disclosed it to be full of pus. He directed her to keep it washed out and clean and to keep the cold packs applied. Appellant states that he made no effort to remove the root of the tooth at the time of his treatment, and that his object was to open the tooth, remove the decayed pulp, and establish drainage to relieve the infected condition. Appellee had a most unfortunate experience in connection with the tooth and the same was later removed surgically by incision from the outside. Appellee brought this suit against appellant urging that because of appellant's negligence in the exercise of due care and skill, his insanitary and unclean dental instruments, and his failure to remove the root of the tooth, that she was thereby infected and suffered the injuries complained of. The jury returned a verdict in favor of appellee in the sum of $2,800. Judgment was entered on the

verdict, and appellant prosecutes this appeal therefrom.

Appellant assigns but one error for reversal, namely, that the trial court erred in permitting a dentist who was called as a witness for the plaintiff, to answer a hypothetical question propounded by counsel for appellee, over the objection of appellant. The question propounded was as follows:

"Q. Now, Doctor, assume that a dentist in attempting to extract a molar tooth from the left side of the lower jaw of a person broke off and removed the top or exposed part of such tooth and failed to remove and permitted to remain in the gum the root of such tooth; and further assume that in doing such act such dentist inserted his fingers into the mouth of such person without having immediately prior thereto washed or cleansed such fingers, and at such time inserted into the mouth of such person, syringe, forceps and other dental instruments which had not been sterilized immediately prior to such using; and further assume that at the time of and prior to such attempted extraction no inflammation or swelling of the cheeks, jaws, gums or neck of such person was present, and further assume that by the third day after such attempted extraction the left cheek and the gum on the left side of the lower jaw of such person became locked together and so continued to be locked together for at least six weeks thereafter; and further assume that by the fourteenth day after such attempted extraction of such tooth a hard lump about one and one-half inches in diameter appeared on the outside of such person's neck on the left side thereof beneath the lower jaw, which lump remained for two months thereafter and then broke, discharging a pus-like substance and thereafter drained for six more weeks; upon such assumption do you have an opinion as to whether or not the assumed condition of such person's gums, cheeks, jaws and neck after the attempted extraction were the direct and natural re-

sult, either of the assumed breaking of such tooth and failure to remove such root or the assumed insertion of the fingers into the mouth as aforesaid and the assumed use of such unsterilized instruments or a combination of all or any of such assumed acts?''

To this question the attorney for appellant made the following objection: ''I desire to make only one objection to that question, and that is that it is improper, invading the province of the jury and calling for an opinion of an ultimate fact which the jury is to determine.'' To this objection, the court responded: ''That objection is overruled, he may answer.'' The witness had apparently become somewhat confused with the objections following the reading of the question which was propounded to him. He did, however, answer ''Yes,'' but made request that the question be restated. The question was again read to the witness. The same objection was interposed thereto. The objection was overruled, and the witness again answered ''Yes.''

Appellee insists that the question asked was intended to call for an opinion of the witness as to whether or not the combined acts set out, or any of them, could have caused the infection. However, appellee did not pursue the examination further in this respect and permitted the answer ''Yes'' of the witness as made to the question, to stand. If the appellee had intended to further interrogate the witness in order to obviate this error, she failed to do so. Juries are not skilled or versed in fine legal distinctions and legal phraseology. We are of the opinion that the only reasonable construction the jury could have put upon the question was, did the witness believe from the facts set out in the question, that the injuries complained of by the plaintiff, were the ''direct and natural result'' of the acts of appellant; and that the only reasonable interpretation the jury could place upon the witness' answer ''Yes'' was that in his opinion the injuries

complained of by appellee were the "direct and natural result" of the acts of appellant as set out in said question. This is the only such question asked, and it was asked at no other time.

The witness was testifying on behalf of appellee who was plaintiff below. The jury could understand but one purpose in the calling of this witness by the plaintiff, and that was in order that his testimony might contribute to establishing plaintiff's case against the defendant. The various facts going to establish the manner and method of treatment employed by appellant were incorporated in the hypothetical question, together with the affliction from which appellee later suffered, and the witness was asked as a part of the question, whether or not in his opinion appellee's condition was "the direct and natural result" of the acts of appellant as therein set out. To this, he answered "Yes." The evidence in this case was highly conflicting. Under such circumstances an expert witness cannot take the place of the jury and declare his belief as to an ultimate fact. *Keefe v. Armour & Co.*, 258 Ill. 28; *People v. Schultz*, 260 Ill. 35; *Kimbrough v. Chicago City Ry. Co.*, 272 Ill. 71. We cannot conclude otherwise than that the jury understood by the question propounded, that the witness was asked as an expert in dentistry, if in his opinion, the injuries complained of by appellee "were the direct and natural result" of the acts of appellant in treating her tooth.

Since this case is to be reversed and remanded for the reasons above assigned, we have undertaken no discussion of the facts, and have endeavored to limit our reference to such facts as we considered necessary to disclose the nature of this case.

The judgment herein is reversed and the cause remanded.

*Reversed and remanded.*