Patricia Jean Hallis, by Her Father and Next Friend, Joseph A. Hallis, Appellee, v. Stover Company, Appellant.

**Gen. No. 36,896.**

45

Opinion filed May 2, 1934.

JOHN A. BLOOMINGSTON, for appellant.

RIDER & THUMA, for appellee; CHESTER D. KERN, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

The defendant appeals to this court from a judgment entered in the superior court of Cook county in a personal injury action in which a judgment was entered in favor of the plaintiff in the sum of $10,000, and which was reduced by plaintiff's remittitur to $6,500. The case was tried twice, and on the previous

trial the jury returned a verdict of $10,000, and upon motion for a new trial by the defendant, the trial court set aside the verdict and granted a new trial.

The amended declaration upon which the issues were joined alleges in the first count that the plaintiff, a minor, was about 19 months old and lived with her parents at 2914 North 76th avenue, Elmwood Park, Illinois; that at the time of the occurrence this infant was walking in the kitchen of her parent's home, and the defendant through its servant negligently placed and permitted a bucket of lye to stand on the floor of the kitchen at the place where the plaintiff's minor was walking, and that as a proximate result and in consequence of defendant's negligence by its servant, plaintiff fell against, upon and into said bucket of lye and was injured.

The second amended count is the same as the first, except that it alleges that the defendant by its servant placed and permitted to stand on the floor of the kitchen, where the plaintiff was walking, a container or receptacle containing a dangerous fluid and that the defendant so carelessly and negligently failed to guard and cover said container that as a direct result and in consequence of the defendant's carelessness and negligence, by its servant, plaintiff fell against, upon and into said container and her person came in contact with said fluid and by means thereof plaintiff was injured.

The accident involved in this suit occurred in the kitchen of the home of plaintiff's parents where she was injured by a pail containing lye coming in contact with her body. The lye was used in repairing a refrigerator owned by the father of this minor. The child was 18 or 19 months old at the time of the accident. The father, Joseph A. Hallis, called upon the Stover Company, the defendant, to have needed repairs made upon the refrigerator, and upon request of

the father, an agent of the company was sent to make such repairs.

There is evidence that on the morning of April 9, 1931, about 10 o'clock, Roy Thompson, a repair man from the defendant company, called to make the needed repairs to the refrigerator. He requested Margaret Hallis, the infant's mother, to remove all food from the refrigerator, which was done, and the food placed upon the kitchen table. While Thompson was removing the tools from his kit, the plaintiff's minor was in the kitchen. Mrs. Hallis stated in the presence of Thompson that she would take the baby out of the kitchen, and the baby and her toys were put on the back porch, and Mrs. Hallis hooked the gate that led to the back stairway and returned to the kitchen and fastened the storm door to the kitchen. During the course of the morning, Mrs. Hallis removed the child from the porch and put her in the bathroom, and then again put her back on the porch and fastened the storm door which led to the entrance of the kitchen and Thompson continued his work. The evidence from this point is conflicting.

There were two occurrence witnesses present at the time the child was injured, one being Mr. Thompson, defendant's repair man, and the other Joseph Hallis, a son of Joseph A. Hallis and Margaret Hallis, and a brother of plaintiff's minor. As to the occurrence, Joseph Hallis testified for the plaintiff, substantially as follows: That at the time of the occurrence he was seven years of age; that he had returned home from school about five minutes after 12 on the day of the accident; that he rang the front doorbell and his mother opened the door and he entered and was told that he would have to wait for his lunch; that Mrs. Hallis went into the kitchen and Thompson continued to work on the refrigerator; that his tools were scattered on the floor; that about 15 minutes to one the

boy came into the kitchen and told his mother that he would be late in his return to school; that he had his lunch at about 25 minutes to one, which he ate in the kitchen while standing at the corner of the table; that the repair man was in the kitchen at the time and continued working on the refrigerator; that the repair man got up and walked over to the door and unhooked it, and then put the infant Patricia's table against it to hold it open; that he returned to his work, and the child came in and sort of stumbled over the tools and sat in the bucket in the middle of the floor; that Thompson when he heard her scream turned around and put her under the water faucet, and the mother of the child came into the kitchen.

Thompson's version of the accident is that he came to the home of the plaintiff, met Mrs. Hallis, who complained that the refrigerator ran excessively; that he examined the machine and told her that the operating pressure on the machine would have to be reduced and a new part put in the machine; that he advised Mrs. Hallis that there would be disulphide oxide in the room and that the windows would have to be opened for ventilation; that the windows were then opened, and at that time he saw this little girl and told Mrs. Hallis that the gas was irritating but not poisonous, and that she had better put the child out of the room while he was working; that he then proceeded to fix the machine; that the child was on the back porch or in the back yard, and the mother was elsewhere in the house; that a kitchen table was placed crosswise of the kitchen door, and the screen door was also closed; that a few things were taken from the ice box and put on the table; that Thompson then proceeded to take the gas from the machine, and it was necessary to let the sulphur dioxide out of the machine, and in order to do that he used a pail into which he poured two pints of lye and a gallon and a half of water; that the pail was about 14 inches high, 10 or 11 inches around, was water

tight and held about 2 gallons; that he then ran a copper tube from the unit into the bottom of the bucket and allowed the gas to drain into the lye solution; that neutralized the gas so that only a part of this very irritating substance was permitted to diffuse into the room; that while this was going on, the air was bad; that none of the material was spilled; that when the gas was filtered he did not know whether he would have to use the bucket of lye again, so he shoved it over to the sink and went ahead and worked on the machine; that after he had been working on the machine a couple of hours the young boy came home from school through the back door, and moved the table at which time his mother was preparing his lunch, both the boy and his mother being in the room; that the work was done on the machine with his back toward the mother and the boy; that while the boy was eating his lunch and while he, Thompson, had his head close to the ice box listening to the sound of the motor, and his back to the door entering the porch—the mother having left the room without the knowledge of Thompson,—he heard a baby cry, and turning around he saw that this little girl had apparently sat down in the bucket of lye. He immediately jumped up, pulled the pail from under the sink, raised the little girl to the sink and began to run cold water over her; that the mother came in almost immediately and took the child from him.

The evidence of the occurrence witnesses, together with the testimony of other witnesses upon facts material to the issues, was before the jury, and upon this evidence the jury returned the verdict.

There is no conflict in the evidence except in regard to that bearing upon the accident, in the kitchen, to plaintiff's minor. The controverted question of fact is as to the location of the pail of lye and the manner in which the child entered the kitchen and was caused to stumble and come in contact with the pail of lye

solution. This solution is a poisonous chemical and is a dangerous substance. The label on the can offered in evidence has this cautionary warning: "Caution—Hudson Lye is very powerful chemical and must be handled with care. Be careful of eyes, face hands and clothes. Follow instructions exactly—Failure to do so may cause injury." With this in mind, we are led to the belief that the defendant's agent was fully aware at the time he produced the cans for the purpose used, that this dangerous chemical should be handled so as not to cause injury. He had knowledge of the presence of the child, and there is evidence which tends to establish the fact that defendant's agent opened the kitchen door knowing of the child's presence on the porch, and failing by this act to take precaution to prevent the child from entering the kitchen and coming in contact with the pail of lye, she was injured as a result of being burned by this powerful chemical.

The defendant calls the attention of the court to the case of *Putney v. Keith*, 98 Ill. App. 285, as being conclusive as to the right of plaintiff to recover. This action was one to recover damages for injuries sustained by a minor two years of age falling into a pan of hot water which stood on the floor of the kitchen, causing the death of the child. In the discussion of the case, the court said:

"What was the duty which Martha Keith owed to Susan Putney? She did not invite, but knew that Susan had been invited and had come to the house; that she was in the habit of passing, in running around a circuit, through the rooms of the house, among other rooms through the kitchen of the house (and a doorway leading into such kitchen); she knew that Susan was a child, two years of age. Martha owed to Susan the duty of not intentionally or willfully injuring her, or preparing for her a trap or pitfall with the intention that Susan should or might fall therein. She owed

to her the duty of doing her work with ordinary care for the safety of Susan.  Martha was not employed to look after and watch out for the safety of Susan. . . . She owed no duty to Susan, except such as arose from her knowledge of the presence and habits or ways of Susan.  She did not owe to Susan the duty of ceasing to discharge her household duties in the ordinary way, and in the manner by which they are by ordinarily prudent people discharged. . . . In the absence of allegation to the contrary, it must be assumed against the pleader that Martha was engaged in a proper domestic occupation for which such a dish of hot water was required, at the particular place in the room where it was put, and that she had a right to perform that domestic office at that particular time. . . . Undoubtedly that which is ordinary care as respects adults, may not be as regards children; nevertheless, as regards children as well as adults, the care of persons having no special relation to them, required by law, is that which prudent people exercise under like circumstances.''

This case does not militate against this cause of action.  As we understand the reasoning of the court, for want of a proper allegation that the dish of hot water was negligently placed and used at the particular place in the room with knowledge of the presence of the child, the declaration did not allege actionable negligence.

The declaration in this case states a cause of action. The allegation in the first count alleges that the defendant knew of the presence of the child, and further alleges general negligence in the placing of the pail of lye on the floor of the kitchen where the child was walking, and in the second count the allegation of the presence of the child and that defendant's servant placed and permitted to stand on the floor of the kitchen a container or receptacle containing a dangerous fluid,

uncovered and unguarded, and because of the defendant's negligence the child came in contact with the fluid and was injured. The fact that the lye is a dangerous substance and must be handled with care, and failure to do so may cause injury is covered by the allegations in the declaration. As to whether this lye was handled by the defendant's agent with such care as not to cause injury to the plaintiff's minor was for the jury. The child is not chargeable with contributory negligence because of her age, and the contention of the defendant that the mother of the child was negligent in the care of the injured child cannot be imputed to the child. In the case of *Ohnesorge v. Chicago City Ry. Co.,* 259 Ill. 424, the court said upon this question:

"... it is the settled law of this State that in a suit by a child who is merely injured, to recover damages, the contributory negligence of the father will not defeat the action brought by the child. This proposition must be conceded as sound law under the decisions of this court. *Chicago City Railway Co. v. Wilcox,* 138 Ill. 370; *Chicago City Railway Co. v. Tuohy,* 196 id. 410; *Richardson v. Nelson,* 221 id. 254; *Perryman v. Chicago City Railway Co.,* 242 id. 269."

The defendant contends that the evidence of Joseph Hallis, the brother of Patricia Jean Hallis, is so improbable that the court would be justified in rejecting his evidence completely.

We have examined the testimony of this witness. This boy was present in the kitchen at the time of the occurrence in question, as testified to by the witness Thompson, who was produced by the defendant, and was the only other witness present at the time of the accident. This youth was vigorously cross-examined by the defendant, and the fact that the boy was only seven years of age at the time of the accident does not disqualify him as a witness. His testimony was clear and the jury no doubt considered his evidence, to-

gether with the other circumstances in evidence, and believed his story. It will not be necessary to repeat the substance of his testimony, except to say that the evidence of this boy is not improbable, but, on the contrary the jury upon the question of credibility believed the evidence offered by the plaintiff, which included the testimony of this witness.

There is also the question before this court as to the admissibility of certain evidence of medical experts based upon hypothetical questions, and the defendant complains that Dr. Tenney, a witness, was permitted to answer that in his opinion the falling of the child into the lye produced the burns and scars, and was responsible for the diseased condition of the kidneys, and the abnormal condition of the anemia of the blood.

There is no evidence in the record that the child did not come in contact with this lye solution, and it is not disputed that the child was burned by this lye, and the child being burned it would necessarily follow that certain results could occur. This does not invade the province of the jury, or call for the opinion of the witness upon an ultimate question of fact. In the case of *Wolczek v. Public Service Co.,* 342 Ill. 482, the court said, which is material upon the question here involved: ''As to the objection that the answer amounted to no more than a speculation, it is sufficient to say that the answer was the opinion of the witness, who had been qualified as an expert and was based on evidence in the record. The third ground of objection is that the answer invaded the province of the jury. It is argued that the statements of the witness that there was a direct causal relation between the accident and the conditions found and that in all cases of severe electric shock there is a dilatation of the heart, were, in effect, telling the jury that such conditions were true in this case. Where there is no dispute as to the manner and cause of the injury or that the injury was sustained, a physician may directly testify that in his

opinion a condition later found was caused by the injury. (*Fellows-Kimbrough v. Chicago City Railway Co.*, 272 Ill. 71; *Schlauder v. Chicago and Southern Traction Co.*, 253 id. 154; *City of Chicago v. Didier*, 227 id. 571.) In this case there is no dispute as to the facts of the accident or that injury resulted therefrom. The witness, as an expert, stated as his opinion that in all cases of severe electric shock a heart dilatation results. He had also testified that he had found, both by clinical examination and X-ray pictures, that the plaintiff at the time of the trial was so affected. We find no error in the admission of this testimony.''

The testimony of Dr. Kvitek, the attending physician, is also questioned, but his testimony is based upon his attendance upon the injured child, and his observation of the condition of the child at the time of the accident and after treatment by him during the course of several weeks, and we are unable to agree with the defendant that the court erred when it admitted the evidence of this doctor, which is in part as follows: That he attended the plaintiff's minor at St. Anthony's Hospital the day after the accident, and further attended her for a period of five weeks, and described her condition and the treatment. At the time of the first visit, the doctor found the child unconscious, with her eyes closed, and burns over one-third of her body, over her arms, the body, and both upper and lower extremities. The doctor was unable to open the eyes to examine them until two days later. The eyes remained closed for about four days. The child was screaming, delirious and at times completely unconscious. The doctor treated her for five weeks, first seeing her two or three times a day. He examined the child on January 14, 1933, about 19 months after the accident. He found the scarred areas healed, and where the burns had been a keloid formation, one about seven inches long and about a half inch wide. The

doctor described a keloid formation as a tumor formation usually occurring in the area of a scar or burn. He tested the heart and found it slightly enlarged. He testified that the plaintiff had sustained a permanent injury to her kidneys, that the heart was involved, and that she must be watched closely.

It is also contended that the verdict of the jury was excessive. As we have already indicated, the jury brought in a verdict of $10,000, and by a remittitur of $3,500, a judgment was entered for $6,500. The evidence bearing upon the question as to whether the judgment for $6,500 was based upon the evidence, it appears from the record that Patricia Jean Hallis was 19 months of age, and according to the testimony of the mother, with the exception of a cold or a stomach ache had always been in perfect health; that when her clothes were taken off by her mother her skin came off with them and she stopped crying within a few minutes; that at the Belmont Hospital the doctor did not attempt to bandage her for the reason that she was too sore—her body was raw and red, and she was unconscious for four days. Dr. Kvitek, the attending physician, saw the child the day following the accident, and attended her for a period of five weeks. He described her condition and treatment, but it will not be necessary to repeat his testimony, as it is set forth elsewhere in this opinion.

From the evidence as we have it before us, the court was fully justified in entering a judgment for $6,500 after a remittitur of $3,500, and the judgment is accordingly affirmed.

*Judgment affirmed.*

HALL, P. J., and WILSON, J., concur.