City of Flora for use of Liberty Mutual Insurance Company, Appellee, v. Sam Bryden, Appellant.

Opinion filed December 12, 1938.   Rehearing denied January 14, 1939.

SMITH, GEORGE & McCOLLUM, of Flora, and W. C. ROPIEQUET, of East St. Louis, for appellant.

H. D. McCOLLUM, of Louisville, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

The city of Flora for the use of Liberty Mutual Insurance Company, its insurer, brought this suit against Sam Bryden to recover the amount paid the dependants of Howard Gilman, responsive to an order of the Illinois Industrial Commission, who received an injury from which he died while in the employ of said city.   The deceased received said injury September 5, 1935, and died September 16, 1935.   The complaint alleges the right of plaintiff to sue under section 29 of the Illinois Workmen's Compensation Act [Ill. Rev. Stat. 1937, ch. 48, § 166; Jones Ill. Stats. Ann. 143.44].

It also alleges that on September 5, 1935, the city operated an electric light and power plant wherein it had employed the deceased as an electrical engineer; that Bryden was removing and replacing boilers in this plant under a contract with the city; that the city, deceased and Bryden were all subject to the Illinois Workmen's Compensation Act; that employees of Bryden, under his exclusive care and control, on that date were breaking up concrete foundations with chisels and hammers. All of these allegations were admitted by Bryden in his answer.

It was further alleged in the complaint that on September 5, 1935, while deceased was walking through the boiler room on his employer's business, exercising all due care for his safety and while the city was in the exercise of all due care for the safety of the deceased, he was struck in the left breast by a piece of steel broken from the sledge hammer used by an employee of Bryden, causing a wound resulting in his death on September 16, 1935; that Bryden was then personally present in charge of the work of his employees; that such work was hazardous and dangerous causing pieces of hammers and drills to fly with great force, frequently penetrating the flesh and causing serious injury, all of which Bryden knew; that it thereupon became the duty of Bryden to safeguard and carry on such work so as not to endanger other persons; that he neglected to do so and that this neglect was the cause of the injury and the direct and proximate cause of the death of the deceased; that the injuries sustained by deceased were accidental injuries arising out of and in the course of his employment, and the city was liable to pay compensation for such injuries and for the death of deceased; and that such injuries and death were not proximately caused by the negligence of deceased or of the city or its employees, but were caused under circumstances creating a legal liability against Bryden. In his answer

Bryden admitted he was present in charge of the work of his employees on September 5, 1935, but denied all the other allegations summarized in this paragraph.

The complaint further alleged that the city became liable to pay $4,500 to the widow of deceased; that the Industrial Commission of Illinois had awarded the widow of deceased $1,208.10 in a lump sum and the balance in weekly payments; that the insurer, for whose use this action was brought, was incorporated for the purpose of carrying on insurance, including workmen's compensation insurance; that on September 5, 1935, the insurer covered the city under a workmen's compensation policy and became liable and did pay the award rendered in favor of the widow of deceased, hence was subrogated to the widow's right to bring this action. As to the allegations summarized in this paragraph, Bryden disclaimed any knowledge or information.

In addition to his denials the defendant Bryden as an affirmative defense alleged that the injury received by deceased was not in itself sufficient to cause his death; that the deceased and the city were obligated to secure and provide proper and necessary medical care, which they failed to exercise reasonable diligence in doing; that no effort was made to remove the certain piece of steel which had penetrated the flesh of deceased until four days after the alleged injury, and that the deceased by reason of the failure of proper and necessary medical treatment, became exposed to infection and toxemia, which was the proximate and sole cause of his death. No pleading was filed by the city in response to this.

The injury upon which this suit is based occurred in the electric light plant in Flora, Illinois. This plant is housed in a building consisting of two large rooms. In the south room are the engines; in the north room are the boilers. The deceased was an engineer in the south

room. Improvements were being made in the boilers in the north room. Such improvements necessitated the deepening or lowering of the pits in which the boilers were, and in order to do this it apparently became necessary to take out the cement bottoms of the pits for the purpose of lowering. Defendant was employed by the city to perform such necessary work. On September 5, 1935, defendant with his men were at work on this job. Deceased came through the door leading from the engine room to the boiler room and walked around the pits where the boilers were and stopped near to the point where defendant's men, four of them, were working. Their work at that time consisted of breaking or destroying the cement bottom of the pits by the use of steel chisels and large hammers of the weight of about 10 pounds. These hammers served to drive the chisels into the cement, thereby to break it. At a point some six or seven feet from where two of the men were doing this work, deceased stopped and engaged in conversation with defendant. There it was noticed that his shirt was covered with blood. The deceased made some ejaculation about something hitting or striking him. The defendant unbuttoned deceased's shirt and looked over the wound to some extent, and afterwards took deceased to a doctor for treatment. About the time of this incident one of the defendant's servants who was using a hammer looked at his hammer and saw that a small piece of steel was broken off of it.

Upon examination by the doctor it was found that a piece of steel had penetrated the flesh in deceased's chest, struck a rib and glanced upward and backward, severing the intercostal muscles and was imbedded in the flesh about an inch and a half from where it entered the body. This piece of steel was removed by the doctor and was offered in evidence here and identified as plaintiff's exhibit one. This exhibit was certi-

fied to this court as an original exhibit, but it never appeared. When the envelope and gauze in which it was supposed to be sealed was opened at the day of oral argument, it was found that said exhibit was not there. We have never seen it.

Some evidence was offered as to the dangerous character of work defendant and his servants were engaged in and the danger of particles of steel breaking from the implements used. No precautions were taken by way of barricades to prevent the happening of such things as are alleged to have happened here. No warning was given of a dangerous place, or the dangerous character of the work; only a "keep out" sign was attached to one of the doors, which is a common thing to be attached to all plants of this character.

When deceased was taken to the doctor the doctor made an examination as best he could under the circumstances,—probed the wound with his little finger, enlarged it in order that it might be gotten at more easily, but did not attempt at that time to remove the said exhibit. Some days later septicemia set in, from which the deceased died on September the 16th of the same year.

The case was heard by the court without a jury and judgment was rendered in favor of plaintiff for the sum of $4,266.10. From this judgment appellant has appealed, and has assigned a very large number of errors, all of which might easily have been placed in three or four assignments. Chief of these assignments are that the verdict is contrary to the law and evidence, and against the manifest weight of the evidence, error of the court in denying the motion by defendant for judgment in its favor, refusal of proper evidence and the admission of incompetent evidence.

Defendant claims that the allegations of his affirmative defense not having been answered by plaintiff they are admitted as true, and that, therefore, the court

erred in not directing a verdict for defendant, because said affirmative defense having been admitted entirely destroys the cause of action set up in the complaint. On this contention defendant invokes section 156 of the Civil Practice Act, [Ill. Rev. Stat. 1937, ch. 110; Jones Ill. Stats. Ann. 104.032], which provides ''When new matter by way of defense or counterclaim is pleaded in the answer, a reply shall be filed by the plaintiff''; and also relies on section 40 [Ill. Rev. Stat. 1937, ch. 110, § 164; Jones Ill. Stats. Ann. 104.040] which provides ''Every allegation, except allegations of damages, not explicitly denied shall be deemed to be admitted'' and so forth. These sections in many cases might be taken as literally true, as in the case of *Lewis v. Nieman,* 293 Ill. App. 639, 12 N. E. (2d) 701 (Abst.). This was a case in which the usual charge of damages by assault was alleged in the complaint without any statement that said assault was made not in necessary self-defense. The affirmative defense in the case alleged that the assault was made in necessary self-defense of the defendant. No reply was made to this allegation, and the Second District Appellate Court held that self-defense was admitted and, therefore, defeated the cause of action. It will be observed in that case that at no point was the allegation of self-defense denied. These sections must be interpreted, however, in the light of a rational application to various causes of action. The complaint in this case alleges that the deceased came to his death by reason of a certain injury described therein, and that it came while deceased and the city of Flora were both in the exercise of reasonable care, respectively, for their own safety. This amounts to a denial of the affirmative defense. It would not make the issue any stronger if after the filing of the affirmative defense the city had again alleged that deceased came to his death by reason of the accident described. It is unnecessary; it would be

superfluous.  It might be illustrated by the act of placing a witness on the stand and eliciting certain statements of fact; then when these are denied, to place the same witness back on the stand to elicit them again in rebuttal.   It is unnecessary, in other words, for a double denial of these facts.  The filing of the affirmative defense in this case did not raise a new issue, as in the case of *Lewis v. Nieman,* 293 Ill. App. 639, 12 N. E. (2d) 701 (Abst.), *supra.*

The court did not err in refusing to direct a verdict for defendant by reason of the claimed admissions set up in the affirmative defense.   The issue of how deceased came to his death was fairly presented to the court and the court found adversely to the claim set up by the affirmative defense.  This was purely a question of fact.  The doctor testified that the immediate cause of death was septicemia caused by infection from the wound made by the piece of steel.  It is idle to argue that the septicemia arose from some other cause—malpractice for example.   The evidence is squarely against that argument.   Of course results come from wounds such as this.  Results are what produce death and not the impact itself. The finding of the court on this issue was warranted by the evidence.

It is urged that the defendant is guilty of no negligence.  Let's see.  He was engaged in a hazardous occupation, known to him to be so.  It was known to him and his men that such things as chipping steel happen in connection with the occupation in which they were engaged.  In fact it is a matter of common knowledge. He was present when deceased walked into the boiler room, apparently unfamiliar with what might result from the character of the work being carried on, while defendant knew of its dangerous character.   There was no physical protection from injury such as the one that happened; no barricades, no boards, no screen, no protection of any kind; no warning by defendant to

deceased to come farther away from the pit where he was standing. If injury results growing out of such a condition, how can it be said that defendant was not negligent in creating that condition and carrying on the character of work which he knew to be hazardous under that condition? Can anyone say that under these circumstances a court or jury would be in error in holding as a fact that defendant was guilty of negligence? We think not. The books are replete with cases of similar character from all jurisdictions, holding that men engaged in an occupation must in the carrying on of that occupation, use care commensurate with the known danger. This it is apparent that the defendant did not do, and to hold as a matter of law that defendant was free from negligence under the circumstances of this case would be little short of preposterous. It would only be equaled by a finding that the finding of negligence against the defendant in this case was against the manifest weight of the evidence. There is nothing by way of testimony to contravene facts above stated.

Did the deceased receive his injuries by reason of this negligence? A recital of the above facts together with the facts of the injury answer the question.

Argument is offered to the effect that the injury to deceased might have or must have come about through some other condition. The facts are, as shown by the evidence, that within five minutes' time in which deceased was looking for his boss to deliver a message to him, he received a wound in the chest, which caused defendant to take such serious notice of it as to take him to a doctor. Almost instantaneous with this incident one of defendant's servants examined his hammer and found that a sliver off of it was gone. A sliver of steel or some metal was afterwards located in the wound received by deceased. This is not an inference upon an inference; it is a clear case of circumstantial

evidence from which one would naturally and reasonably conclude that the piece of steel flying from the hammer injured the defendant. At least it would be a question of fact to be determined by the court, and the court did determine that fact that way. We cannot say that it is against the manifest weight of the evidence. On the contrary we think the circumstances and facts in the case fully support that finding.

It is also urged that the deceased was guilty of contributory negligence, and that as a matter of law. From a reading of this record it appears to us that deceased did under the circumstances what a reasonably prudent man would have done under like circumstances. We do not believe as a matter of fact that deceased was guilty of contributory negligence; certainly he was not guilty of contributory negligence as a matter of law. The facts upon which that charge is claimed were all before the court. It is a question of fact whether deceased was guilty of contributory negligence, and the trial court thought that he was not. We are entirely in harmony with that finding; and without such finding having been made by the court,— a finding by which we feel bound, it being a question of fact,— if we were hearing this case for the first time we would be of the opinion that deceased was not guilty of contributory negligence in the premises.

It is next urged that the city of Flora was guilty of such contributory negligence as to bar recovery in this case. We see nothing in the proof to warrant this assertion. The defendant was an independent contractor. He was placed in a safe position so far as the city was concerned. The city did not create any unsafe condition. There is nothing about the premises as such which rendered them hazardous or liable to cause injury. Nothing caused injury or contributed to injury in this case except the unsafe manner in which defendant carried on his work without taking the proper precautions for the safety of others.

In our judgment this case was fairly tried. The judgment of the lower court is in harmony with the law and the evidence in this case, and it should be and is hereby affirmed.

*Judgment affirmed.*