Ruth Will (Mueller), Appellee, v. 1527–31 Wicker Park
Avenue Building Corporation et al., Defendants.
Elm Park Hotel Company, Appellant.

Gen. No. 43,056.

Opinion filed March 11, 1946. Released for publication March 25, 1946.

HINSHAW & CULBERTSON of Chicago, for appellant; OSWELL G. TREADWAY, of Chicago, of counsel.

HY SMOLLER and MARION J. HANNIGAN, both of Chicago, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In the trial court there were three defendants. At the close of the evidence the cause was dismissed as to the defendant building corporation. The jury returned a verdict in favor of the defendant American Fork & Hoe Company and another verdict against the hotel company, with damages assessed at $25,000. On a motion for a new trial the court required a remittitur of $7,500 and entered judgment on the verdict of the jury for $17,500. Plaintiff did not appeal from the judgment rendered on the verdict for defendant fork and hoe company. The defendant hotel company appealed. We reversed the judgment against it. (324 Ill. App. 264.) The Supreme Court reviewed our judgment, reversed it and remanded the cause "with directions to consider the other error assigned in that court." (*Mueller v. Elm Park Hotel Co.*, 391 Ill. 391.) No other briefs have been filed in this court, but the cause has been again argued orally.

The complaint alleged the defendants were negligent. The facts are stated in the opinions heretofore filed and need not be repeated at length. Plaintiff was injured in the forenoon of May 5, 1941. She resided at the hotel and was the employee of Julia Orszulak, who leased from the hotel space in which she conducted a coffee shop on the first floor of the building. The

kitchen floor of the shop needed repairs. Mr. Starlin, was the maintenance man of the hotel. He had been employed by it from December 1, 1940. He also acted as janitor, attended to the plumbing and electrical and carpenter work. The manager of the hotel told him to go to the coffee shop and repair the floor. It was covered with linoleum, securely fastened with cement and gum. When directed to do this, Starlin told the manager he didn't have the tools "to start in." The manager told him to order the tools. This was on the Saturday before the injury to plaintiff, which occurred the following Monday. Starlin bought a small pinch bar and a hatchet from a nearby hardware store. Monday morning he went to the coffee shop and told Mrs. Orszulak he would be ready to start the work early. He left and returned with a hammer, a hatchet and a pinch bar. He started to work between 9:00 and 9:30 a. m. The front door of the restaurant was closed. No customers were served while he was doing the work. There was a sign on the door that the place was closed. Mrs. Starlin, Mrs. Orszulak and the plaintiff were present. Plaintiff took a seat from 10 to 15 feet away from where the work was done. She sat on a seat in front of the service table, drinking a cup of coffee and smoking a cigarette.

Starlin began cutting away the old linoleum. He used the hatchet as a cutter and struck it with the hammer; held the hatchet in his left hand, the hammer in his right, and hit the top of the hatchet with the hammer. He was on his knees as he worked. He struck the hatchet with the hammer. A spark flew and a piece of the hatchet chipped off. There is no claim made that defendant knew, or in the exercise of reasonable care should have known, that the hatchet was defective. Plaintiff felt a sharp pain in her right ankle and saw blood from a small hole just above the instep. Mrs. Starlin and Mrs. Orszulak rinsed the blood from her limb and applied mercurochrome. Plaintiff called her physician and went to her room

in the hotel. The piece of steel was extracted and the wound healed.

A few days afterwards plaintiff felt a numbness on the outside of her right heel and a pink spot about the size of a dime appeared there. It did not yield to treatment but grew worse. She was examined by Dr. Smith on May 14, 1941, and on May 23 was sent to the Walther Memorial Hospital, where she remained under the care of Dr. Smith until June 3. The condition of her heel was diagnosed as a skin infection, ''ringworm dermatitis.'' When she left the hospital she returned to her own doctor for further treatment. A specialist was called, but the treatment did not give relief. She went to the Cook County Hospital, where she remained until October 1, 1942. Her right limb became swollen from the ankle up to the thigh. There was a large open ulcer on the side of her right foot at the time of the trial, June 25, 1943.

The complaint charges defendants (a) ''improperly used the aforesaid hatchet''; and that they were negligent (b) ''In that they failed to properly guard the place in which said work was being performed''; (d) that the hotel ''negligently allowed said repair work to be done without providing proper and sufficient safeguards.'' On the trial plaintiff abandoned the theory that the use of the hatchet in itself was improper and argued to the jury that the fork and hoe company ''manufactured and distributed a defective hatchet,'' then an issue in the case. That question has been eliminated by the verdict of the jury and the judgment of the court in favor of the fork and hoe company, from which no appeal was taken by plaintiff.

It seems, the sole questions left for our consideration are, whether there was any evidence from which the jury could reasonably find that the chip of steel which struck plaintiff's limb was the legal cause of the dermatitis or ringworm on her heel, and whether defendant hotel company was negligent in failing to provide safeguards for the place in which the work

was done. The condition on plaintiff's heel was diagnosed as a skin infection, ringworm dermatitis. Plaintiff offered medical testimony by an expert physician, who stated in response to a hypothetical question (which covered only a part of the facts of the actual case) that the chip of steel might or could, in his opinion, have caused the condition of plaintiff's limb. Defendant objected to the hypothetical question on the ground it was not a complete statement of the material facts, whereupon plaintiff's attorney asked defendant's attorney to suggest in what respects this was true. Defendant's attorney declined to assume the responsibility of doing this. We therefore hesitate to reverse on that point. *Brockman v. Peoples Gas Light & Coke Co.*, 319 Ill. App. 115; *Hallis v. Stover Co.*, 275 Ill. App. 44, 53.

The question seems narrowed to this: whether it was negligent in law for the servant of the hotel company to do this work without providing safeguards which would have prevented the injury to plaintiff. The plaintiff had a right to be in the coffee shop at the time she was there. By her agreement with her employer she was to receive food in part-payment for her services. She was not, however, required to be present at the time the repairs were being made nor was it necessary for her to sit in the seat in which she sat where she was injured. We hold as a matter of law the defendant hotel company was not negligent in doing the repair work at the time and in the way it was done. We hold this to be true for the reason that in the exercise of ordinary care the servant of defendant making the repairs could not have anticipated the accident by which plaintiff was injured or any similar accident to her.

In *Dabrowski v. Illinois Cent. R. Co.*, 303 Ill. App. 31, at page 42, this court said:

"Assuming a duty from one person to another and neglect thereof, liability for the neglect is limited in law to results which reasonably could have been an-

ticipated. Without such a rule people could not safely live in our complex society. The Supreme Court of the United States, in *Atchison, Topeka & Santa Fe Ry. Co. v. Calhoun,* 213 U. S. 1, at page 9 said: 'But even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that "if men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as' possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in a known course of things." ' "

In support of the contention defendant was liable, only the case of *City of Flora for use of Liberty Mut. Ins. Co. v. Bryden,* 300 Ill. App. 1, is cited. The plaintiff there was injured in the boiler room of an electric light plant, where cement was being removed from the bottom of the boiler pit. Steel chisels and sledge hammers weighing about ten pounds each were used in driving the chisels into the cement. An employee was struck by a piece of steel broken from a sledge hammer. We agree with the statement in defendant's reply brief: "It seems almost absurd to compare this operation with that in the case at bar, . . . ."

We hold the instruction requested by defendant for a verdict in its favor at the close of all the evidence should have been granted, and its motion for judgment notwithstanding the verdict should have been allowed. For these errors the judgment will be reversed.

*Reversed.*

NIEMEYER, J., concurs.

O'CONNOR, J., specially concurring. I agree with the result.